# EXHIBIT C

Electronically FILED by Superior Court of California, County of Los Angeles on 06/18/2020 10:27 AM Sherri R. Carter, Executive Officer/Clerk of Court, by C. Monroe,Deputy Clerk

Case 2:20-cv-07131   Document 1-3   Filed 08/07/20   Page 2 of 30   Page ID #:20

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Michael Stern

# JML LAW

A PROFESSIONAL LAW CORPORATION

5855 TOPANGA CANYON BLVD., SUITE 300

WOODLAND HILLS, CALIFORNIA 91367

Tel: (818) 610-8800

Fax: (818) 610-3030

JOSEPH M. LOVRETOVICH, STATE BAR NO. 73403
ERIC M. GRUZEN, STATE BAR NO. 222448
CHRISTINA R. MANALO, STATE BAR NO. 297718

Attorneys for Plaintiff
**ESMERALDA SERVIN**

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

| | |
|---|---|
| ESMERALDA SERVIN, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>SPLASH NEWS AND PICTURE AGENCY, LLC, a Nevada limited liability corporation; RCAPITAL PARTNERS LLP, a limited liability partnership; and DOES 1 through 50, inclusive;<br>Defendants. | Case No.:  20STCV23024<br><br>COMPLAINT FOR:<br><br>1. **SEX/GENDER HARASSMENT IN VIOLATION OF GOVERNMENT CODE § 12940 *ET SEQ*. [FEHA];**<br>2. **SEX/GENDER DISCRIMINATION IN VIOLATION OF GOVERNMENT CODE § 12940 *ET SEQ*. [FEHA];**<br>3. **FAILURE TO PREVENT DISCRIMINATION AND HARASSMENT IN VIOLATION OF GOVERNMENT CODE § 12940 *ET SEQ*. [FEHA];**<br>4. **RETALIATION IN VIOLATION OF FEHA;**<br>5. **RETALIATION IN VIOLATION OF LABOR CODE § 1102.5;**<br>6. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br><br>**<u>DEMAND FOR JURY TRIAL</u>**<br><br>AMOUNT DEMANDED EXCEEDS $25,000.00 |

Plaintiff, ESMERALDA SERVIN, hereby brings her complaint against the above-named

Defendants and states and alleges as follows:

1

COMPLAINT

**PRELIMINARY ALLEGATIONS**

1.  At all times material herein, Plaintiff, ESMERALDA SERVIN (hereinafter referred to as "Plaintiff") was and is a resident of the State of California, County of Los Angeles.

2.  Plaintiff is informed, believes, and based thereon alleges that, at all times material herein, Defendant SPLASH NEWS AND PICTURE AGENCY, LLC (hereinafter "SPLASH NEWS") doing business as "SPLASH NEWS"  was a Nevada limited liability corporation doing business in the State of California, County of Los Angeles.

3.  Plaintiff is informed, believes, and based thereon alleges that, at all times material herein, Defendant RCAPITAL PARTNERS LLP (hereinafter "RCAPITAL") was a limited liability partnership doing business in the State of California, County of Los Angeles.

4.  At all times material herein, Plaintiff was employed by Defendants SPLASH NEWS AND PICTURE AGENCY, LLC and RCAPITAL PARTNERS LLP (hereafter collectively referred to as "Defendants") in the State of California, County of Los Angeles.

5.  DOES 1 through 50, and each of them, were and are the shareholders, and/or directors, and/or officers, and/or agents, and/or alter egos of Defendants, and in doing the things herein described, were acting within the scope of their authority as such shareholders, and/or directors, and/or officers, and/or agents, and/or alter egos of Defendants.

6.  The true names and capacities, whether individual, corporate, associate or otherwise of DOES 1 through 50 are unknown to Plaintiff who therefore sues these Defendants under said fictitious names.  Plaintiff is informed and believes that each of the Defendants named as a DOE Defendant is legally responsible in some manner for the events referred to in this complaint, either negligently, willfully, wantonly, recklessly, tortiously, strictly liable, statutorily liable or otherwise, for the injuries and damages described below to this Plaintiff.  Plaintiff will in the future seek leave of this court to show the true names and capacities of these DOE Defendants when it has been ascertained.

7.  Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Defendants is responsible in some manner for, and proximately caused, the harm and damages alleged herein below.

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

2
COMPLAINT

8.    Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants named herein acted as the employee, agent, spouse, partner, alter-ego, joint employer, and/or joint venturer of each of the other Defendants named herein and, in doing the acts and in carrying out the wrongful conduct alleged herein, each of said Defendants acted within the scope of said relationship and with the permission, consent and ratification of each of the other Defendants named herein.

9.    Finally, Defendants are liable for the acts of their employees under the doctrine of respondeat superior and via conspiracy liability.  Each of the acts described above and further described below under each Cause of Action was perpetrated during the course and scope of employment of the actors, was carried out with knowledge of Defendants, was condoned and ratified, and/or was taken pursuant to an implied agreement by Defendants to deliberately take said actions.

10.   Hereinafter in the Complaint, unless otherwise specified, reference to a Defendant or Defendants shall refer to all Defendants, and each of them.

11.   The jurisdiction of this Court is proper for the relief sought herein, and the amount demanded by Plaintiff exceeds $25,000.

## FACTUAL ALLEGATIONS

12.   Defendants hired Plaintiff as an Account Manager on or about January 4, 2016.

13.   Plaintiff Esmeralda Servin is a woman.

14.   Upon her hire, Defendants made derogatory and harassing comments about Plaintiff's gender/sex.  These included, but were not limited to:

    a)   A female manager asked Plaintiff: "Oh, you're a mom? How can you do both? How can you handle this?"

    b)   Plaintiff's co-workers regularly mocked her for pumping and/or breastfeeding while in the office.

    c)   On one occasion, Plaintiff was locked out of her usual lactation space and was forced to use a conference room with transparent glass walls.  While Plaintiff was

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

pumping her breastmilk, a co-worker remarked: "Wouldn't it be funny if the conference video feed went live?"

15.   Despite her hostile work environment, Plaintiff excelled in her role and became a valued member of Defendants' organization.  In or about November 2017, Plaintiff was promoted to the Head of U.S. Sales.  Defendants promoted her again in August 2018 to Co-Lead of all of the company's U.S. operations.

16.   Plaintiff continued to endure a pattern of discriminatory actions and harassing comments on the basis of her gender/sex.  These included, but were not limited to:

a)   Despite Plaintiff's elevation to Head of Sales, her male colleagues introduced Plaintiff to their business partners as "our sales girl."

b)   Male employees whom Plaintiff supervised repeatedly made comments to her which included "You're more effective when you're sweeter"

c)   Male employees whom Plaintiff supervised repeatedly told Plaintiff: "Maybe you come off the wrong way because you're a mother and speak to people in a direct tone."

d)   One male employee whom Plaintiff supervised, Daemon Tung, periodically remarked on Plaintiff's appearance. On several occasions, Mr. Tung remarked about Plaintiff's outfit by asking her whether her husband "controlled her spending."

e)   Other male co-workers often remarked about their expectations of Plaintiff's mental aptitude, including sarcastic remarks such as: "She's actually smart."

f)   At the same time of Plaintiff's promotion to Head of U.S. Sales, Defendants' then- CEO, John Churchill, elected to reduce commission payments to contributors by 20%.  Plaintiff further alleges that Defendant was not allocating contributors' royalties properly.  Due to Defendants' failure to communicate the cause of commission reductions to contributors, contributors complained that Plaintiff was struggling as Head of Sales due to the sharp reduction in their commissions.  When Plaintiff requested that management at

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

**JML LAW**
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

Defendant Splash disclose contributors' pay structure to contributors, Defendants ordered Plaintiff to keep the commission structure hidden. As a result, Defendants made Plaintiff the scapegoat for the cause of contributors' reduction in commission.

g) Plaintiff alleges that Defendants also assigned her work duties which her male counterparts were not required to meet. In or about October 2018, Plaintiff's Supervisor Steve Hinchliff directed Plaintiff to develop a sales strategy regarding boosting company content. Plaintiff is informed and believes, and based thereon alleges, that Defendants did not require male employees in Plaintiff's position to perform this work and other crucial business tasks.

h) On one occasion, Plaintiff reported to Defendants the conduct of a contributor who was regularly disrespectful to female employees and who regularly berated and harassed Plaintiff on the phone. Defendants required Plaintiff to keep working with this contributor. Plaintiff is informed and believes, and based thereon alleges, that Defendants regularly permitted male employees to part ways with problematic contributors.

i) On or about November 5, 2018, Plaintiff's Supervisor Steve Hinchliff sent Plaintiff an unprompted message containing a video of a comedian singing the lyrics: "Even though he grabbed pussies and pissed on hotel beds, he is now the President."

17. The harassment based on Plaintiff's gender/sex was severe and/or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. Defendants' conduct interfered with Plaintiff's work performance and seriously affected her psychological well-being. Plaintiff was deeply upset by Defendants' conduct, and considered her work environment to be intimidating, hostile and abusive.

18. On May 24, 2018, Plaintiff complained to CEO John Edwards of gender discrimination and harassment in the workplace. Specifically, she complained to Mr. Edwards of Defendants' failure to provide her with support, and of sending her a message that her workplace

1   was a "good ole boys club."  After her complaint, Defendants failed to prevent further

2   discrimination and harassment of Plaintiff on the basis of her gender/sex.

3       19.   Defendants continued to discriminate and harass Plaintiff on the basis of her

4   gender/sex through the end of her employment.

5       20.   During the course of Plaintiff's employment with Defendants, Plaintiff also disclosed

6   information to agents of Defendants (including but not limited to her Supervisor Steve Hinchliff)

7   which she reasonably believed constituted Defendants' violations of state and/or federal statutes,

8   rules and/or regulations. These agents had authority over Plaintiff and/or had the authority to

9   investigate, discover or correct the alleged violations.

10      21.   Plaintiff complained to Defendants that the company's commission structure and lack

11  of transparency about missing content from the archive was being deliberately hidden from

12  contributors. Plaintiff reasonably believed at the time of her complaint that Defendant's failure to

13  fully disclose employee contributors' pay structure was unethical and violated certain federal

14  statutes, rules and/or regulations.

15      22.   In or about April of 2019, Plaintiff complained to Steve Hinchliff and CFO Emma

16  Curzon regarding Defendants' recent healthcare policy discussions, which highlighted employee

17  performance as a factor in deciding which employees received healthcare.  Plaintiff reasonably

18  believed at the time of her complaint that Defendants' use of employee performance to elect

19  which health insurance plan to use was unethical and violated certain laws and/or regulations.

20      23.   On or about April 12, 2019, Plaintiff reported in writing and on a phone call to her

21  Supervisor Steve Hinchliff and UK Sales Director John Edwards that a male employee had been

22  engaged in illegal bidding.  At the time of her complaint, Plaintiff reasonably believed this

23  employee's illegal bidding practices to constitute violations of state and/or federal statutes, rules

24  and/or regulations.  The day after her written e-mail complaint to John Edwards, Plaintiff

25  observed that her complaint had been deleted from her company e-mail account.

26      24.   In or about May 2019, Plaintiff informed UK Sales Director Edwards of the gender

27  harassment she was continuing to experience. However, instead of responding to Plaintiff's

28  complaint of harassment, Defendants retaliated against her by excluding Plaintiff from key

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

1  meetings which prevented her from performing her work duties. On one occasion, Plaintiff

2  planned and arranged a business meeting with a prospective partner. After confirming this

3  meeting in writing, Plaintiff's business partner never arrived. Plaintiff's male colleagues later

4  informed Plaintiff that they had rescheduled this meeting. When Plaintiff attempted to plan on

5  joining this meeting, her male colleagues informed her, "We'll fill you in later."

6     25. On or about June 5, 2019, Plaintiff complained to Royalties Executive Lisa Short of

7  the pervasive workplace gender discrimination and harassment. Ms. Short assured Plaintiff that

8  she would soon be speaking to CFO Emma Curzon to address the issues Plaintiff complained of.

9  Plaintiff is informed and believes, and based thereon alleges, that Defendants failed to perform

10 an adequate investigation of Plaintiff's complaint.

11    26. Two weeks later, on or about June 17, 2019, Defendants terminated Plaintiff for

12 pretextual reasons. Substantial motivating factors in Plaintiff's termination were her gender/sex,

13 retaliatory animus for Plaintiff's aforementioned complaints of Defendants' conduct which she

14 believed to constitute unlawful activity/ violations of state and/or federal rules and/or

15 regulations, and retaliatory animus for Plaintiff's protected complaints of gender discrimination

16 and gender harassment.

17    27. Plaintiff exhausted her administrative remedies by filing a complaint with the

18 Department of Fair Housing and Employment ("DFEH") on November 11, 2019. The DFEH

19 issued Plaintiff an immediate right-to-sue letter on November 11, 2019.

20 <u>**FIRST CAUSE OF ACTION**</u>

21 **SEX/GENDER HARASSMENT IN VIOLATION OF GOVT. CODE §§ 12940 *ET SEQ.***

22 **(FEHA)**

23 **(Against SPLASH NEWS, RCAPITAL and DOES 1 through 50)**

24    28. Plaintiff hereby repeats and incorporates all preceding paragraphs as though fully set

25 forth herein.

26    29. At all times herein mentioned, California Government Code § 12940 et seq., was in

27 full force and effect and was binding on Defendants, as Defendants regularly employed five (5)

28

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

7

COMPLAINT

or more persons.  California Government Code § 12940(j) requires Defendants to refrain from harassing any employee on the basis of their sex.

30.  The sexually harassing conduct and harassing comments based on Plaintiff's gender/sex were severe and/or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

31.  Defendants failed to take immediate appropriate corrective action.  Defendants failed to properly train its supervisors regarding how to handle sex/gender-based harassment and complaints of sex/gender-based harassment. Defendants failed to take reasonable action to prevent further harassment from occurring.

32.  Plaintiff Esmeralda Servin is a woman.

33.  Upon her hire, Defendants made derogatory and harassing comments about Plaintiff's gender/sex.  These included, but were not limited to:

    d)  A female manager asked Plaintiff: "Oh, you're a mom? How can you do both? How can you handle this?"

    e)  Plaintiff's co-workers regularly mocked her for pumping and/or breastfeeding while in the office.

    f)  On one occasion, Plaintiff was locked out of her usual lactation space and was forced to use a conference room with transparent glass walls.  While Plaintiff was pumping her breastmilk, a co-worker remarked: "Wouldn't it be funny if the conference video feed went live?"

34.  Despite her hostile work environment, Plaintiff excelled in her role and became a valued member of Defendants' organization.  In or about November 2017, Plaintiff was promoted to the Head of U.S. Sales.  Defendant promoted her again in August 2018 to Co-Lead all of the company's U.S. operations.

35.  Plaintiff continued to endure a pattern of discriminatory actions and harassing comments on the basis of her gender/sex.  These included, but were not limited to:

    a)  Despite Plaintiff's elevation to Head of Sales, her male colleagues introduced Plaintiff to their business partners as "our sales girl."

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

b)    Male employees whom Plaintiff supervised repeatedly made comments to her which included "You're more effective when you're sweeter"

c)    Male employees whom Plaintiff supervised repeatedly told Plaintiff: "Maybe you come off the wrong way because you're a mother and speak to people in a direct tone."

d)    One male employee whom Plaintiff supervised, Daemon Tung, periodically remarked on Plaintiff's appearance. On several occasions, Mr. Tung remarked about Plaintiff's outfit by asking her whether her husband "controlled her spending."

e)    Other male co-workers often remarked about their expectations of Plaintiff's mental aptitude, including sarcastic remarks such as: "She's actually smart."

f)    At the same time of Plaintiff's promotion to Head of U.S. Sales, Defendants' then- CEO, John Churchill, elected to reduce commission payments to contributors by 20%.  Plaintiff further alleges that Defendant was not allocating contributors' royalties properly.  Due to Defendants' failure to communicate the cause of commission reductions to contributors, contributors complained that Plaintiff was struggling as Head of Sales due to the sharp reduction in their commissions.  When Plaintiff requested that management at Defendant Splash disclose contributors' pay structure to contributors, Defendants ordered Plaintiff to keep the commission structure hidden.  As a result, Defendants made Plaintiff the scapegoat for the cause of contributors' reduction in commission.

g)    Plaintiff alleges that Defendants also assigned her work duties which her male counterparts were not required to meet.  In or about October 2018, Plaintiff's Supervisor Steve Hinchliff directed Plaintiff to develop a sales strategy regarding boosting company content.  Plaintiff is informed and believes, and based thereon alleges, that Defendants did not require male employees in Plaintiff's position to perform this work and other crucial business tasks.

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

h) On one occasion, Plaintiff reported to Defendants the conduct of a contributor who was regularly disrespectful to female employees and who regularly berated and harassed Plaintiff on the phone.  Defendants required Plaintiff to keep working with this contributor.  Plaintiff is informed and believes, and based thereon alleges, that Defendants regularly permitted male employees to part ways with problematic contributors.

i) On or about November 5, 2018, Plaintiff's Supervisor Steve Hinchliff sent Plaintiff an unprompted message containing a video of a comedian singing the lyrics: "Even though he grabbed pussies and pissed on hotel beds, he is now the President."

36.  The harassment based on Plaintiff's gender/sex was severe and/or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. Defendants' conduct interfered with Plaintiff's work performance and seriously affected her psychological well-being. Plaintiff was deeply upset by Defendants' conduct, and considered her work environment to be intimidating, hostile and abusive.

37.  On May 24, 2018, Plaintiff complained to CEO John Edwards of gender discrimination and harassment in the workplace. Specifically, she complained to Mr. Edwards of Defendants' failure to provide her with support, and of sending her a message that her workplace was a "good ole boys club."  After her complaint, Defendants failed to prevent further discrimination and harassment of Plaintiff on the basis of her gender/sex.

38.  Defendants continued to discriminate and harass Plaintiff on the basis of her gender/sex through the end of her employment.

39.  In or about May 2019, Plaintiff informed UK Sales Director Edwards of the gender harassment she was continuing to experience. However, instead of responding to Plaintiff's complaint of harassment, Defendants retaliated against her by excluding Plaintiff from key meetings which prevented her from performing her work duties.  On one occasion, Plaintiff planned and arranged a business meeting with a prospective partner.  After confirming this meeting in writing, Plaintiff's business partner never arrived. Plaintiff's male colleagues later

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

1   informed Plaintiff that they had rescheduled this meeting.  When Plaintiff attempted to plan on

2   joining this meeting, her male colleagues informed her, "We'll fill you in later."

3       40.   On or about June 5, 2019, Plaintiff complained to Royalties Executive Lisa Short of

4   the pervasive workplace gender discrimination and harassment.   Ms. Short assured Plaintiff that

5   she would soon be speaking to CFO Emma Curzon to address the issues Plaintiff complained of.

6   Plaintiff is informed and believes, and based thereon alleges, that Defendants failed to perform

7   an adequate investigation of Plaintiff's complaint.

8       41.   Two weeks later, on or about June 17, 2019, Defendants terminated Plaintiff for

9   pretextual reasons.  Substantial motivating factors in Plaintiff's termination were her gender/sex,

10  retaliatory animus for Plaintiff's aforementioned complaints of Defendants' conduct which she

11  believed to constitute unlawful activity/ violations of state and/or federal rules and/or

12  regulations, and retaliatory animus for Plaintiff's protected complaints of gender discrimination

13  and gender harassment.

14      42.   The above said acts of Defendants constitute harassment based on gender/sex in

15  violation of California Government Code § 12940 et seq.

16      43.   As a proximate result of the aforesaid acts of Defendants, Plaintiff has suffered

17  actual, consequential and incidental financial losses, including without limitation, loss of salary

18  and benefits, and the intangible loss of employment related opportunities in her field and damage

19  to her professional reputation, all in an amount subject to proof at the time of trial. Plaintiff

20  claims such amounts as damages pursuant to California Civil Code § 3287 and/or § 3288 and/or

21  any other provision of law providing for prejudgment interest.

22      44.   As a proximate result of the wrongful acts of Defendants, Plaintiff has suffered and

23  continues to suffer emotional distress, humiliation, mental anguish and embarrassment, as well

24  as the manifestation of physical symptoms. Plaintiff is informed and believes, and thereon

25  alleges that she will continue to experience said physical and emotional suffering for a period in

26  the future not presently ascertainable, all in an amount subject to proof at the time of trial.

27      45.   As a proximate result of the wrongful acts of Defendants, Plaintiff has been forced to

28  hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover attorneys' fees and costs under California Government Code § 12965(b).

46.   Defendants had in place policies and procedures that specifically prohibited and required Defendants' managers, officers, and agents to prevent harassment based on sex/gender against and upon employees of Defendants.  Each Defendant aided, abetted, participated in, authorized, ratified, and/or conspired to engage in the wrongful conduct alleged above.  Plaintiff should, therefore, be awarded exemplary and punitive damages against Defendants in an amount to be established that is appropriate to punish Defendants and deter others from engaging in such conduct.

<u>**SECOND CAUSE OF ACTION**</u>

**SEX/GENDER DISCRIMINATION IN VIOLATION OF GOVT. CODE §§ 12940 *ET SEQ.* (FEHA)**

**(Against SPLASH NEWS, RCAPITAL and DOES 1 through 50)**

47.   Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth at this place.

48.   At all times herein mentioned, California Government Code §§ 12940 et seq., the Fair Employment and Housing Act ("FEHA"), were in full force and effect and were binding on Defendant and each of them, as Defendant regularly employed five (5) or more persons.

49.   California Government Code § 12940(a) requires Defendant to refrain from discriminating against any employee on the basis of sex and/or gender.

50.   Plaintiff Esmeralda Servin is a woman.

51.   Upon her hire, Defendants made derogatory and harassing comments about Plaintiff's gender/sex.  These included, but were not limited to:

g)   A female manager asked Plaintiff: "Oh, you're a mom? How can you do both? How can you handle this?"

h)   Plaintiff's co-workers regularly mocked her for pumping and/or breastfeeding while in the office.

i)    On one occasion, Plaintiff was locked out of her usual lactation space and was forced to use a conference room with transparent glass walls.  While Plaintiff was pumping her breastmilk, a co-worker remarked: "Wouldn't it be funny if the conference video feed went live?"

52.   Despite her hostile work environment, Plaintiff excelled in her role and became a valued member of Defendants' organization.  In or about November 2017, Plaintiff was promoted to the Head of U.S. Sales.  Defendant promoted her again in August 2018 to Co-Lead all of the company's U.S. operations.

53.   Plaintiff continued to endure a pattern of discriminatory actions and harassing comments on the basis of her gender/sex.  These included, but were not limited to:

a)    Despite Plaintiff's elevation to Head of Sales, her male colleagues introduced Plaintiff to their business partners as "our sales girl."

b)    Male employees whom Plaintiff supervised repeatedly made comments to her which included "You're more effective when you're sweeter"

c)    Male employees whom Plaintiff supervised repeatedly told Plaintiff: "Maybe you come off the wrong way because you're a mother and speak to people in a direct tone."

d)    One male employee whom Plaintiff supervised, Daemon Tung, periodically remarked on Plaintiff's appearance. On several occasions, Mr. Tung remarked about Plaintiff's outfit by asking her whether her husband "controlled her spending."

e)    Other male co-workers often remarked about their expectations of Plaintiff's mental aptitude, including sarcastic remarks such as: "She's actually smart."

f)    At the same time of Plaintiff's promotion to Head of U.S. Sales, Defendants' then- CEO, John Churchill, elected to reduce commission payments to contributors by 20%.  Plaintiff further alleges that Defendant was not allocating contributors' royalties properly.  Due to Defendants' failure to communicate the cause of commission reductions to contributors, contributors

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

13
COMPLAINT

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

complained that Plaintiff was struggling as Head of Sales due to the sharp reduction in their commissions.  When Plaintiff requested that management at Defendant Splash disclose contributors' pay structure to contributors, Defendants ordered Plaintiff to keep the commission structure hidden.  As a result, Defendants made Plaintiff the scapegoat for the cause of contributors' reduction in commission.

g) Plaintiff alleges that Defendants also assigned her work duties which her male counterparts were not required to meet.  In or about October 2018, Plaintiff's Supervisor Steve Hinchliff directed Plaintiff to develop a sales strategy regarding boosting company content.  Plaintiff is informed and believes, and based thereon alleges, that Defendants did not require male employees in Plaintiff's position to perform this work and other crucial business tasks.

h) On one occasion, Plaintiff reported to Defendants the conduct of a contributor who was regularly disrespectful to female employees and who regularly berated and harassed Plaintiff on the phone.  Defendants required Plaintiff to keep working with this contributor.  Plaintiff is informed and believes, and based thereon alleges, that Defendants regularly permitted male employees to part ways with problematic contributors.

i) On or about November 5, 2018, Plaintiff's Supervisor Steve Hinchliff sent Plaintiff an unprompted message containing a video of a comedian singing the lyrics: "Even though he grabbed pussies and pissed on hotel beds, he is now the President."

54.   The harassment based on Plaintiff's gender/sex was severe and/or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. Defendants' conduct interfered with Plaintiff's work performance and seriously affected her psychological well-being. Plaintiff was deeply upset by Defendants' conduct, and considered her work environment to be intimidating, hostile and abusive.

55.  On May 24, 2018, Plaintiff complained to CEO John Edwards of gender discrimination and harassment in the workplace. Specifically, she complained to Mr. Edwards of Defendants' failure to provide her with support, and of sending her a message that her workplace was a "good ole boys club."  After her complaint, Defendants failed to prevent further discrimination and harassment of Plaintiff on the basis of her gender/sex.

56.  Defendants continued to discriminate and harass Plaintiff on the basis of her gender/sex through the end of her employment.

57.  In or about May 2019, Plaintiff informed UK Sales Director Edwards of the gender harassment she was continuing to experience. However, instead of responding to Plaintiff's complaint of harassment, Defendants retaliated against her by excluding Plaintiff from key meetings which prevented her from performing her work duties.  On one occasion, Plaintiff planned and arranged a business meeting with a prospective partner.  After confirming this meeting in writing, Plaintiff's business partner never arrived. Plaintiff's male colleagues later informed Plaintiff that they had rescheduled this meeting.  When Plaintiff attempted to plan on joining this meeting, her male colleagues informed her, "We'll fill you in later."

58.  On or about June 5, 2019, Plaintiff complained to Royalties Executive Lisa Short of the pervasive workplace gender discrimination and harassment.   Ms. Short assured Plaintiff that she would soon be speaking to CFO Emma Curzon to address the issues Plaintiff complained of. Plaintiff is informed and believes, and based thereon alleges, that Defendants failed to perform an adequate investigation of Plaintiff's complaint.

59.  Two weeks later, on or about June 17, 2019, Defendants terminated Plaintiff for pretextual reasons.  Substantial motivating factors in Plaintiff's termination were her gender/sex, retaliatory animus for Plaintiff's aforementioned complaints of Defendants' conduct which she believed to constitute unlawful activity/ violations of state and/or federal rules and/or regulations, and retaliatory animus for Plaintiff's protected complaints of gender discrimination and gender harassment.

60.  As a proximate result of the aforesaid acts of Defendants, and each of them, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation,

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

loss of salary and benefits, and the intangible loss of employment related opportunities in her field and damage to her professional reputation, all in an amount subject to proof at the time of trial.  Plaintiff claims such amounts as damages pursuant to Civil Code § 3287 and/or § 3288 and/or any other provision of law providing for prejudgment interest.

61.  As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer emotional distress, humiliation, mental anguish and embarrassment, as well as the manifestation of physical symptoms.  Plaintiff is informed and believes and thereupon alleges that she will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

62.  As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been forced to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith.  Plaintiff is entitled to recover attorneys' fees and costs under California Government Code § 12965(b).

63.  Defendants had in place policies and procedures that specifically prohibited and required Defendants' managers, officers, and agents to prevent discrimination based on sex and gender against and upon employees of Defendants.  Plaintiff should, therefore, be awarded exemplary and punitive damages against Defendants in an amount to be established that is appropriate to punish Defendants and deter others from engaging in such conduct.

64.  Furthermore, Plaintiff is informed and believes and based thereon alleges that Defendants had a pattern and practice of discriminating against and harassing employees due to their sex and gender.  Plaintiff should, therefore, be awarded exemplary and punitive damages against each Defendant in an amount to be established that is appropriate to punish Defendants and deter others from engaging in such conduct.

//
//
//
//

COMPLAINT

**THIRD CAUSE OF ACTION**

**FAILURE TO PREVENT DISCRIMINATION AND HARASSMENT**

**IN VIOLATION OF GOVT. CODE §§ 12940 *ET SEQ.* (FEHA)**

**(Against SPLASH NEWS, RCAPITAL and DOES 1 through 50)**

65.   Plaintiff hereby repeats and incorporates all preceding paragraphs as though fully set forth herein.

66.   At all times herein mentioned, California Government Code § 12940 et seq. was in full force and effect and was binding on Defendants. These sections impose on an employer a duty to conduct a timely and good faith investigation of allegations of discrimination and harassment, to take immediate and appropriate corrective action to end harassment and take all reasonable steps necessary to prevent harassment from occurring, among other things.

67.   Defendants failed to conduct a reasonable and good faith investigation of Plaintiff's complaints, and failed to take reasonable action to prevent further discrimination and harassment from occurring. As a result, the discrimination and harassment of Plaintiff continued.

68.   Defendants' aforementioned conduct caused Plaintiff to suffer severe emotional distress, including but not limited to anxiety, stress, and depression.

69.   The above-described acts of created an intimidating, oppressive, hostile, offensive and abusive work environment, which altered and impaired the conditions of Plaintiff's employment and Plaintiff's emotional well-being. Defendants' conduct was a concerted pattern of harassment of a repeated, routine and generalized nature.

70.   Defendants violated Government Code § 12940 (j) and (k) by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act as described herein.

71.   Defendants failed to fulfill its statutory duty to timely take immediate and appropriate corrective action to end the discrimination and harassment and also failed to take all reasonable steps necessary to prevent the discrimination and harassment from occurring.

72.   In failing and/or refusing to take immediate and appropriate corrective action to end the harassment, and in failing and/or refusing to take all reasonable steps necessary to prevent

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

harassment from occurring, Defendants violated California Government Code § 12940 (j) and (k), causing Plaintiff to suffer damages as set forth above.

73.   As a proximate result of the aforesaid acts of Defendants, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment related opportunities in her field and damage to her professional reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages pursuant to California Civil Code § 3287 and/or § 3288 and/or any other provision of law providing for prejudgment interest.

74.   As a proximate result of the wrongful acts of Defendants, Plaintiff has suffered and continues to suffer emotional distress, humiliation, mental anguish and embarrassment, as well as the manifestation of physical symptoms. Plaintiff is informed and believes, and thereon alleges that she will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

75.   As a proximate result of the wrongful acts of Defendants, Plaintiff has been forced to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover attorneys' fees and costs under California Government Code § 12965(b).

76.   Defendants had in place policies and procedures that specifically prohibited and required Defendants' managers, officers, and agents to prevent discrimination and harassment based on sex and gender against and upon employees of Defendants.  Each Defendant aided, abetted, participated in, authorized, ratified, and/or conspired to engage in the wrongful conduct alleged above.  Plaintiff should, therefore, be awarded exemplary and punitive damages against Defendants in an amount to be established that is appropriate to punish Defendants and deter others from engaging in such conduct.

77.   Furthermore, Plaintiff is informed and believes and based thereon alleges that Defendants had a pattern and practice of discriminating against and/or harassing employees due to their sex and gender.  Plaintiff should, therefore, be awarded exemplary and punitive damages

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

1  against each Defendant in an amount to be established that is appropriate to punish Defendants

2  and deter others from engaging in such conduct.

3  ## FOURTH CAUSE OF ACTION

4  ### RETALIATION

5  ### IN VIOLATION OF GOVT. CODE §§ 12940 *ET SEQ.* (FEHA)

6  ### (Against SPLASH NEWS, RCAPITAL and DOES 1 through 50)

7  78.  Plaintiff hereby repeats and incorporates all preceding paragraphs as though fully set

8  forth herein.

9  79.  California Government Code § 12940(h) makes it unlawful for any person to retaliate

10  against an employee who has engaged in protected activity under the FEHA, including

11  complaining about gender/sex discrimination and harassment.

12  80.  At all times herein mentioned, California Government Code § 12940, et seq., was in

13  full force and effect and was binding on Defendants, as Defendants regularly employed five (5)

14  or more persons.

15  81.  Plaintiff Esmeralda Servin is a woman.

16  82.  Upon her hire, Defendants made derogatory and harassing comments about Plaintiff's

17  gender/sex.  These included, but were not limited to:

18      j)  A female manager asked Plaintiff: "Oh, you're a mom? How can you do both?

19          How can you handle this?"

20      k)  Plaintiff's co-workers regularly mocked her for pumping and/or breastfeeding

21          while in the office.

22      l)  On one occasion, Plaintiff was locked out of her usual lactation space and was

23          forced to use a conference room with transparent glass walls.  While Plaintiff was

24          pumping her breastmilk, a co-worker remarked: "Wouldn't it be funny if the

25          conference video feed went live?"

26  83.  Despite her hostile work environment, Plaintiff excelled in her role and became a

27  valued member of Defendants' organization.  In or about November 2017, Plaintiff was

28

A Professional Law Corporation
JML LAW
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

1  promoted to the Head of U.S. Sales.  Defendant promoted her again in August 2018 to Co-Lead

2  all of the company's U.S. operations.

3     84.    Plaintiff continued to endure a pattern of discriminatory actions and harassing

4  comments on the basis of her gender/sex.  These included, but were not limited to:

5         a)    Despite Plaintiff's elevation to Head of Sales, her male colleagues introduced

6               Plaintiff to their business partners as "our sales girl."

7         b)    Male employees whom Plaintiff supervised repeatedly made comments to her

8               which included "You're more effective when you're sweeter"

9         c)    Male employees whom Plaintiff supervised repeatedly told Plaintiff: "Maybe

10              you come off the wrong way because you're a mother and speak to people in a

11              direct tone."

12        d)    One male employee whom Plaintiff supervised, Daemon Tung, periodically

13              remarked on Plaintiff's appearance. On several occasions, Mr. Tung remarked

14              about Plaintiff's outfit by asking her whether her husband "controlled her

15              spending."

16        e)    Other male co-workers often remarked about their expectations of Plaintiff's

17              mental aptitude, including sarcastic remarks such as: "She's actually smart."

18        f)    At the same time of Plaintiff's promotion to Head of U.S. Sales, Defendants'

19              then- CEO, John Churchill, elected to reduce commission payments to

20              contributors by 20%.  Plaintiff further alleges that Defendant was not

21              allocating contributors' royalties properly.  Due to Defendants' failure to

22              communicate the cause of commission reductions to contributors, contributors

23              complained that Plaintiff was struggling as Head of Sales due to the sharp

24              reduction in their commissions.  When Plaintiff requested that management at

25              Defendant Splash disclose contributors' pay structure to contributors,

26              Defendants ordered Plaintiff to keep the commission structure hidden.  As a

27              result, Defendants made Plaintiff the scapegoat for the cause of contributors'

28              reduction in commission.

**JML LAW**
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

COMPLAINT

g)    Plaintiff alleges that Defendants also assigned her work duties which her male counterparts were not required to meet.  In or about October 2018, Plaintiff's Supervisor Steve Hinchliff directed Plaintiff to develop a sales strategy regarding boosting company content.  Plaintiff is informed and believes, and based thereon alleges, that Defendants did not require male employees in Plaintiff's position to perform this work and other crucial business tasks.

h)    On one occasion, Plaintiff reported to Defendants the conduct of a contributor who was regularly disrespectful to female employees and who regularly berated and harassed Plaintiff on the phone.  Defendants required Plaintiff to keep working with this contributor.  Plaintiff is informed and believes, and based thereon alleges, that Defendants regularly permitted male employees to part ways with problematic contributors.

i)    On or about November 5, 2018, Plaintiff's Supervisor Steve Hinchliff sent Plaintiff an unprompted message containing a video of a comedian singing the lyrics: "Even though he grabbed pussies and pissed on hotel beds, he is now the President."

85.    The harassment based on Plaintiff's gender/sex was severe and/or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. Defendants' conduct interfered with Plaintiff's work performance and seriously affected her psychological well-being. Plaintiff was deeply upset by Defendants' conduct, and considered her work environment to be intimidating, hostile and abusive.

86.    On May 24, 2018, Plaintiff complained to CEO John Edwards of gender discrimination and harassment in the workplace. Specifically, she complained to Mr. Edwards of Defendants' failure to provide her with support, and of sending her a message that her workplace was a "good ole boys club."  After her complaint, Defendants failed to prevent further discrimination and harassment of Plaintiff on the basis of her gender/sex.

87.    Defendants continued to discriminate and harass Plaintiff on the basis of her gender/sex through the end of her employment.

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

21

88.   In or about May 2019, Plaintiff informed UK Sales Director Edwards of the gender harassment she was continuing to experience. However, instead of responding to Plaintiff's complaint of harassment, Defendants retaliated against her by excluding Plaintiff from key meetings which prevented her from performing her work duties.  On one occasion, Plaintiff planned and arranged a business meeting with a prospective partner.  After confirming this meeting in writing, Plaintiff's business partner never arrived. Plaintiff's male colleagues later informed Plaintiff that they had rescheduled this meeting.  When Plaintiff attempted to plan on joining this meeting, her male colleagues informed her, "We'll fill you in later."

89.   On or about June 5, 2019, Plaintiff complained to Royalties Executive Lisa Short of the pervasive workplace gender discrimination and harassment.   Ms. Short assured Plaintiff that she would soon be speaking to CFO Emma Curzon to address the issues Plaintiff complained of. Plaintiff is informed and believes, and based thereon alleges, that Defendants failed to perform an adequate investigation of Plaintiff's complaint.

90.   Two weeks later, on or about June 17, 2019, Defendants terminated Plaintiff for pretextual reasons.  Substantial motivating factors in Plaintiff's termination were her gender/sex, retaliatory animus for Plaintiff's aforementioned complaints of Defendants' conduct which she believed to constitute unlawful activity/ violations of state and/or federal rules and/or regulations, and retaliatory animus for Plaintiff's protected complaints of gender discrimination and gender harassment.

91.   Defendants' conduct, as alleged above, constituted unlawful retaliation in violation of California Government Code § 12940(h).

92.   As a proximate result of the aforesaid acts of Defendants, and each of them, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment related opportunities in her field and damage to her professional reputation, all in an amount subject to proof at the time of trial.  Plaintiff claims such amounts as damages pursuant to Civil Code § 3287 and/or § 3288 and/or any other provision of law providing for prejudgment interest.

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

93.   As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer emotional distress, humiliation, mental anguish and embarrassment, as well as the manifestation of physical symptoms.  Plaintiff is informed and believes and thereupon alleges that she will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

94.   As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been forced to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith.  Plaintiff is entitled to recover attorneys' fees and costs under California Government Code § 12965(b). Defendants had in place policies and procedures that specifically prohibited and required Defendants' managers, officers, and agents to prevent retaliation against and upon employees of Defendants. Defendants' managers, officers, and/or agents were aware of Defendants' policies and procedures requiring Defendants' managers, officers, and agents to prevent retaliation for complaints of sexual harassment against and upon employees of Defendants. However, Defendants' managers, officers, and agents chose to consciously and willfully ignore said policies and procedures and therefore, their outrageous conduct was fraudulent, malicious, oppressive, and was done in wanton disregard for the rights of Plaintiff and the rights and duties owed by each Defendant to Plaintiff.  Each Defendant aided, abetted, participated in, authorized, ratified, and/or conspired to engage in the wrongful conduct alleged above. Plaintiff should, therefore, be awarded exemplary and punitive damages against each Defendant in an amount to be established that is appropriate to punish each Defendant and deter others from engaging in such conduct.

//

//

//

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

**FIFTH CAUSE OF ACTION**

**RETALIATION VIOLATION OF CALIFORNIA LABOR CODE SECTION 1102.5**

**(Against SPLASH NEWS, RCAPITAL and DOES 1 through 50)**

95. Plaintiff hereby repeats and incorporates all preceding paragraphs as though fully set forth herein.

96. At all times mentioned herein California Labor Code section 1102.5 et seq. were in full force and effect and were binding on Defendants and each of them.

97. California Labor Code § 1102.5(a) provides: "An employer, or any person acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

98. California Labor Code § 1102.5(b) provides: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

99.   At the time of her protected complaint, Plaintiff reasonably believed that Defendants' conduct constituted a violation of a state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

100.   During the course of Plaintiff's employment with Defendants, Plaintiff also disclosed information to agents of Defendants (including but not limited to Steve Hinchliff) which she reasonably believed constituted Defendants' violations of state and/or federal statutes, rules and/or regulations. These agents had authority over Plaintiff and/or had the authority to investigate, discover or correct the alleged violations.

101.   Plaintiff complained to Defendants that the company's commission structure and lack of transparency about missing content from the archive was being deliberately hidden from contributors. Plaintiff reasonably believed at the time of her complaint that Defendant's failure to fully disclose contributors' pay structure was unethical and violated certain federal statutes, rules and/or regulations.

102.   In or about April of 2019, Plaintiff complained to Steve Hinchliff and CFO Emma Curzon regarding Defendants' recent healthcare policy discussions, which highlighted employee performance as a factor in deciding which employees received healthcare.  Plaintiff reasonably believed at the time of her complaint that Defendants' use of employee performance to elect which health insurance plan to use was unethical and violated certain laws and/or regulations.

103.   On or about April 12, 2019, Plaintiff reported in writing and on a phone call to her Supervisor Steve Hinchliff and UK Sales Director John Edwards that a male employee had been engaged in illegal bidding.  At the time of her complaint, Plaintiff reasonably believed this employee's illegal bidding practices to constitute violations of state and/or federal statutes, rules and/or regulations.  The day after her written e-mail complaint to John Edwards, Plaintiff observed that her complaint had been deleted from her company e-mail account.

104.   Two weeks later, on or about June 17, 2019, Defendants terminated Plaintiff for pretextual reasons.  Substantial motivating factors in Plaintiff's termination were her gender/sex, retaliatory animus for Plaintiff's aforementioned complaints of Defendants' conduct which she believed to constitute unlawful activity/ violations of state and/or federal rules and/or

regulations, and retaliatory animus for Plaintiff's protected complaints of gender discrimination and gender harassment.

105. As a proximate result of the aforesaid acts of Defendants and each of them, Plaintiff has lost, and will continue to lose, earnings and benefits and has suffered and/or will suffer other actual, consequential and incidental financial losses, in an amount to be proven at trial in excess of the jurisdictional minimum of this court.  Plaintiff claims such amounts as damages together with prejudgment interest pursuant to California Civil Code § 3287 and/or § 3288 and/or any other provision of law providing for prejudgment interest

106. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer emotional distress, humiliation, mental anguish and embarrassment, as well as the manifestation of physical symptoms.  Plaintiff is informed and believes and thereupon alleges that she will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

107. Because the acts taken toward Plaintiff were carried out by managerial employees acting in a deliberate, cold, callous, cruel and intentional manner, in conscious disregard of Plaintiff's rights and in order to injure and damage her, Plaintiff requests that punitive damages be levied against Defendants and each of them, in sums in excess of the jurisdictional minimum of this court.

108. Plaintiff is informed and believes and based thereon alleges that Defendants engaged in a pattern and practice of terminating and/or otherwise retaliating against and harassing employees such as Plaintiff when they disclosed information about suspected illegal activities. Defendants engaged in this conduct instead of informing whistleblowing employees of their protections under the law and implementing a plan to protect them from retaliation and harassment. Plaintiff should, therefore, be awarded exemplary and punitive damages against each Defendant in an amount to be established that is appropriate to punish Defendants and deter others from engaging in such conduct.

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

COMPLAINT

## SIXTH CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

### (Against SPLASH NEWS, RCAPITAL and DOES 1 through 50)

109.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth at this place.

110.     At all times herein mentioned, California Government Code §§ 12940 *et seq.* were in full force and effect and were binding on Defendants and each of them, as Defendants regularly employed five (5) or more persons.  Under the Fair Employment and Housing Act ("FEHA"), Government Code §§ 12940 *e. seq.*, it is an unlawful employment practice for an employer because of their gender/sex or their complaints of gender/sex discrimination and/or harassment, to discharge the person from employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.  California Government Code § 12940(h) makes it unlawful for any employer to terminate an employee on account of their actual or perceived disability.

111.     At all times mentioned, the public policy of the State of California, as codified, expressed and mandated in Labor Code §§ 1102.5 and 98.6, is to prohibit employers from harassing and retaliating against any individual who makes complaints about conduct they reasonably believe to be illegal under federal or state law, including suspected violations of California wage and hour law. This public policy of the State of California is designed to protect all employees and to promote the welfare and well-being of the community at large.  During the course of Plaintiff's employment with Defendants, Plaintiff disclosed information to agents of Defendants which she reasonably believed constituted violations of state and federal statutes, rules and regulations. Accordingly, the actions of Defendants, and each of them, in terminating Plaintiff on the grounds alleged and described herein were wrongful and in contravention of the express public policy of the State of California, to wit, the policy set forth in Labor Code §§ 1102.5 and 98.6, and the laws and regulations promulgated thereunder. As a proximate result of the aforesaid acts of Defendants, and each of them, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

intangible loss of employment related opportunities in her field and damage to her professional reputation, all in an amount subject to proof at the time of trial.  Plaintiff claims such amounts as damages pursuant to Civil Code § 3287 and/or § 3288 and/or any other provision of law providing for prejudgment interest.

112.     As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer emotional distress, humiliation, mental anguish and embarrassment, as well as the manifestation of physical symptoms.  Plaintiff is informed and believes and thereupon alleges that she will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

113.     As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been forced to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith.  Plaintiff is entitled to recover attorneys' fees and costs under California Government Code § 12965(b).  Defendants had in place policies and procedures that specifically required Defendant's managers, officers, and agents to prevent discrimination based on actual/perceived disability against and upon employees of Defendants.  However, Defendants chose to consciously and willfully ignore said policies and procedures and therefore, their outrageous conduct was fraudulent, malicious, oppressive, and was done in wanton disregard for the rights of Plaintiff and the rights and duties owed by each Defendant to Plaintiff. Defendants also had a pattern and practice of discriminating against employees on the basis of their actual/perceived disability.  Each Defendant aided, abetted, participated in, authorized, ratified, and/or conspired to engage in the wrongful conduct alleged above.  Plaintiff should, therefore, be awarded exemplary and punitive damages against each Defendant in an amount to be established that is appropriate to punish each Defendant and deter others from engaging in such conduct in the future.

//

//

**WHEREFORE, Plaintiff prays for judgment as follows:**

1.  For general damages, according to proof;

2.  For special damages, according to proof;

3.  For loss of earnings, according to proof;

4.  For declaratory relief, according to proof;

5.  For injunctive relief, according to proof;

6.  For attorneys' fees, according to proof;

7.  For prejudgment interest, according to proof;

8.  For punitive and exemplary damages, according to proof;

9.  For costs of suit incurred herein;

10. For all equitable relief recoverable pursuant to *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203; and

11. For such other relief that the Court may deem just and proper.


**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial

DATED:      June 18, 2020

JML LAW, A Professional Law Corporation


By: _____

JOSEPH M. LOVRETOVICH

ERIC M. GRUZEN

CHRISTINA R. MANALO

Attorneys for Plaintiff

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

COMPLAINT